UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE HAILEY, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-1787 (VLB) |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF CORRECTION; | : | |
| FORMER ACTING COMMISSIONER | : | |
| AND DEPUTY COMMISSIONER BRIAN | : | |
| MURPHY IN HIS OFFICIAL CAPACITY; | : | |
| COMMISSIONER LEO C. ARNONE | : | |
| IN HIS OFFICIAL CAPACITY; | : | |
| CAPTAIN CARLOS BURGOS IN HIS | : | |
| INDIVIDUAL AND OFFICIAL | : | |
| CAPACITY; AND CAPTAIN DEBRA | : | |
| SYNOTT IN HER INDIVIDUAL AND | : | |
| OFFICIAL CAPACITY, | : | |
|     Defendants. | : | December 14, 2011 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS**
**[Dkt. #12]**

Plaintiff, a former corrections officer of the State of Connecticut Department of Correction ["DOC"] brings this action under 28 U.S.C. §2201, 42 U.S.C. §1981, and 42 U.S.C. §1983 against the DOC, Deputy Commissioner Brian Murphy, Commissioner Leo Arnone, Captain Carlos Burgos, and Captain Debra Synott seeking declaratory and injunctive relief, compensatory damages, punitive damages, attorney's fees and costs, and reinstatement to his position as a Corrections Officer. Currently pending before the Court is a Motion to Dismiss the Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. Pr. 12(b)(1) for lack of subject-matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(5) for

insufficient service of process, and 12(b)(6) for failure to state a claim upon which relief can be granted.

I.      Factual Background

The following facts are taken from the Plaintiff's Complaint. Plaintiff was hired by the DOC as a corrections officer in April 2008. [Dkt. #1, Compl. ¶2]. Plaintiff contends that he remained in good standing with the DOC from April 25, 2008 until August 2008. [*Id.* at ¶3]. After Plaintiff received a poor evaluation dated August 4, 2008 through September 3, 2008, Plaintiff claims that he was subjected to harassment and discriminatory conduct on account of his race and color by Defendants Synott and Burgos.

Plaintiff submitted an incident report on October 20, 2008 to explain the issues that caused him to receive the poor evaluation. Plaintiff contends that after the evaluation was signed by management, a third party, Lieutenant Meeker, added negative information to the incident report as a result of a conversation he had with Defendant Synott. [Dkt. #1, Compl. ¶10]. Plaintiff's October 20, 2008 incident report raised what he reasonably believed to be incidents of employment discrimination. [*Id.* at ¶12]. Specifically, Plaintiff claims that he was severely harassed by Defendant Synott, including being subjected to an accusation that he "put his foot up on the job, and that this act showed complacency." [*Id.* at ¶¶11, 13]. Plaintiff further claims that Defendant Synott asked Plaintiff where he saw himself in the future, and informed him that she did not envision him continuing to work in his position as a corrections officer in the future. [*Id.* at ¶14].

As further evidence of harassment, Plaintiff claims that on October 3, 2008, Officer Cuevas, while touring the unit, informed Plaintiff that he noticed for the second time that Plaintiff had his feet up on the job, and that if it happened again Plaintiff would be escorted off the job. On the same occasion, Officer Cuevas instructed Plaintiff to stand for lieutenants entering the unit. [Dkt. #1, Compl. ¶¶15-16]. After these incidents, Plaintiff felt that his position as a corrections officer was in jeopardy. [*Id.* at ¶17].

On October 7, 2008, Plaintiff was called to Captain Easton's office. Captain Easton had been informed about Plaintiff's evaluation, and suggested that Plaintiff go through the proper chain of command to speak with Defendant Synnot to mitigate any conflict. [Dkt. #1, Compl. ¶18]. On October 13, 2008, Plaintiff called the Lieutenant's office to request a meeting with Defendant Synnot, and was granted permission to speak with her. Upon arrival at Defendant Synnot's office, Synnot informed him that Defendant Burgos would be present during the conversation. Plaintiff alleges that Defendant Burgos then criticized Plaintiff for coming to speak to Defendant Synnot without following the chain of command. [*Id.* at ¶19]. After Plaintiff informed Defendant Burgos that he had followed the chain of command and obtained permission from the Lieutenant's office to speak with Defendant Synnot, Plaintiff claims that Captain Synnot stated to Plaintiff that it was her opinion that her character was being unjustifiably slandered throughout the department. [*Id.* at ¶¶20-21]. Plaintiff further alleges that Defendant Synnot and Defendant Burgos questioned Plaintiff regarding his relationships with others in the Department of Corrections, and who he had

spoken to about Defendant Synnot.  Plaintiff claims that Defendant Synnot informed Plaintiff that she was aware that Plaintiff had an uncle who worked in the New Haven Correctional Center. [*Id.* at ¶22].   Defendant Burgos then stated, almost yelling, at Plaintiff, "I don't care who you know. You can know a warden, you can be related to a commissioner, I don't care. I will do paperwork," and threatened to walk Plaintiff out of the facility.  Plaintiff was then dismissed from the office to return to his unit. [*Id.* at ¶23].

Plaintiff contends that as a result of these incidents he feared that he would lose his job, he feared for his safety, and that he is not aware of any white corrections officers treated in a similarly hostile and intimidating manner.[Dkt. #1, Compl. ¶24].  Plaintiff contacted his union representative James Outlaw to discuss what he believed to be discriminatory treatment at his work and to obtain information regarding the filing of a civil rights complaint . [*Id.* at ¶¶24-25]. Plaintiff contends that immediately following his conversation with his union representative, Defendants Synott and Burgos moved to have Plaintiff terminated from his job. [*Id.*]

Plaintiff was terminated from his employment with the DOC on December 9, 2008. [Dkt. #1, Compl. ¶3].  Plaintiff alleges that Defendants Synott and Burgos subjected him to harassment and discrimination, and ultimately colluded to seek Plaintiff's termination on the basis of his expressed interest in pursuing a civil rights complaint. [Dkt. #1, Compl. ¶¶29-30].  Specifically, Plaintiff alleges that Defendants Synott and Burgos made statements critical of the Plaintiff in incident reports dated October 15, 2008 and October 16, 2008. [Dkt. #1, Compl. ¶8].

**Plaintiff argues that the incidents discussed in the incident reports allegedly occurred on September 18, 19 and 26, 2008 but were not documented in incident reports until after Defendant Synott learned of Plaintiff's intention to file an Affirmative Action complaint alleging that he had been subjected to discriminatory treatment in the workplace. [*Id.* at ¶9]. Plaintiff notes that Defendant Synnott's October 15, 2008 incident report specifically referenced Officer Outlaw's pending Affirmative Action Complaint. [*Id.* at ¶26]. Plaintiff contends that white corrections officers who did not file civil rights complaints were not terminated from their positions within the DOC. [*Id.* at ¶47].**

**II.     Standard of Review**

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003).  However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).  *Id.*  In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *In re AIG Advisor Group Sec. Litig.*, 309 Fed. App'x. 495, 497 (2d Cir. 2009).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal

quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

### III.    Discussion

#### A.  Deficiencies in Service of Process

The Court finds the Plaintiff's flagrant deficiencies of service of process necessitate the dismissal of his claims against the Defendants. Fed. R. Civ. P 4(m) requires a plaintiff to serve his complaint on the defendants within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m). Although the Court may extend the time for service upon a showing of good cause by the plaintiff, in the absence of good cause, the Court may deny such extensions and dismiss the action. *See Harper v. City of New York*, 424 Fed.Appx. 36, 39 (2d Cir. 2011) ("[w]e have interpreted the Rule to give courts both the discretion to grant extensions of the period of service even where no good cause has been shown and, in the absence of good cause, to deny such extensions—that is, a court 'may grant an extension . . . but it is not required to do so.' ") (citing *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007); *see also Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010) (affirming the dismissal of a case where the plaintiff served a defendant well outside the 120 day time period required by Rule 4(m) and the plaintiff had neither sought nor received an extension of time to serve a defendant); *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 508-509(2d Cir. 2006) (affirming a district court's dismissal for failure to timely effect service of process under Rule 4(m) where the plaintiff "made no effort to show good cause for her failure and never requested

an extension of time"). Plaintiff did not request an extension of time to serve the Defendants, nor has Plaintiff even attempted to demonstrate good cause for his failure to do so. Accordingly, all of the Plaintiff's claims against the Defendants are dismissed.

The Court further notes that Plaintiff has failed to serve Defendants Burgos and Synott in their individual capacities. Connecticut law requires that "an individual who is an officer or employee of the State but is not sued as such," must be served by leaving the summons and complaint with the defendant or at his usual place of abode. *Bogle-Assegai*, 470 F.3d at 507 (citing Conn. Gen. Stat. §52-57(a)). Plaintiff's only response to Defendants' assertion in their Motion to Dismiss that Defendants Burgos and Synott have not been served in their individual capacities was to comment that "the Plaintiff states that on information and belief, the individual defendants had agreed to waive personal service of the Writ, Summons and Complaint," absent any evidence or supporting affidavit. Therefore, due to the Plaintiff's flagrant deficiencies of service of process and failure to demonstrate of good cause, the Court dismisses all of the Plaintiff's claims against the Defendants.

Lastly, the Court notes that even if the Court were to exercise its discretion to overlook the deficiencies in service of process, Defendants' Motion to Dismiss would be granted on other grounds. First, Plaintiff's claim for money damages against the Defendants in their official capacity must be dismissed as barred by the Eleventh Amendment. *See Respass v. Murphy*, No.3:10-cv-318, 2010 WL 2232674, at *2 (D. Conn. June 2, 2010) (finding that §1983 claims for damages

against defendants in their official capacities barred by the Eleventh Amendment which protects state from suits for monetary relief and also protects state officials sued in their official capacity) (citations omitted); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather against the official's office").

Second, to the extent that Plaintiff seeks to be reinstated to his position as a corrections officer, such claim is denied, as reinstatement to an employment position as compensation for past instances of allegedly discriminatory conduct is not considered prospective equitable relief pursuant to *Ex Parte Young*. *AA v. Board of Educ.*, 196 F.Supp.2d 259, 267 (E.D.N.Y. 2002).

Third, although Plaintiff's claim for prospective injunctive relief against the Defendants' "*de facto* policy of failing to equally enforce or administer discipline relative to internal DOC Administrative Directive 2.17," [Dkt. #1, Compl. ¶61], raises on ongoing violation as required by the *Ex Parte Young* doctrine, Plaintiff's complaint includes no allegations of discriminatory animus as required to sustain a claim under 42 U.S.C. §1981. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206 (2d Cir. 2004) (holding that "a plaintiff pursuing a claimed violation of §1981 or denial of equal protection under §1983 must show that the discrimination was intentional."). Accordingly, Plaintiff's claim must be dismissed for failure to "state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Fourth, Plaintiff's claim for declaratory relief, seeking "a declaration of his rights and remedies," [Dkt. #1, Compl. ¶50], is completely improper as declaratory judgment cannot be used "solely to adjudicate [a defendant's] past conduct." *Simso v. State of Connecticut*, No. 3:06-CV-301(PCD), 2006 WL 3422194, at *8 (D.Conn Nov. 28. 2006).

## IV.    Conclusion

Based upon the foregoing reasoning, Defendants' Motion to Dismiss is GRANTED. Plaintiff's claims against the Defendants must be dismissed due to Plaintiff's service of the complaint upon the Defendants 177 days following the filing of the complaint, nearly sixty days after the 120 day period required by Fed. R. Civ. P. (4)(m), without any demonstration of good cause or a motion for extension of time. Additionally, Plaintiff failed to serve Defendants Synott and Burgos in their individual capacities as required by Conn. Gen. Stat. §52-57(a). Lastly, the Court notes that even absent such deficiencies in service of process, Plaintiff's claims would be dismissed under Fed. R. Civ. P. 12(b)(5) for lack of subject matter jurisdiction as barred by the Eleventh Amendment, and under Fed. R. Civ P. 12(b)(6) for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.
/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: December 14, 2011.